Bissell, J.,
delivered the opinion of the court.
The insignificance of this controversy is not at all commensurate with the difficulty of the question which it presents. This concerns the right to introduce parol testimony in opposition to the terms of a written agreement entered into between the parties. It is only resolvable by a consideration of the circumstances under which the writing was executed and delivered to the Brewing Company, which is the appellant here. On the 2d of September, 1890, the appellee, Barets, made and delivered to the Brewing Company a promissory note whereby on demand he promised to pay them $1,000. It will be observed there was no agreement to pay interest. The Brewing Company brought suit against him, and set up causes of action arising from the sale and delivery of goods, and the possession of this apparent piece of commercial paper.
The defendant answered, and admitted the first cause of action, and alleged the payment of the money to the sheriff! As to the second, he pleaded the paper was neither given nor *342 delivered as a promissory note, but under circumstances which will be better detailed by stating the proof than by stating the plea.
After the plaintiff offered the note in evidence, and made proof of a demand, the defendant was produced as a witness. His evidence was substantially all the evidence bearing directly on the transaction, and detailed the circumstances out of which it is claimed a defense was made out to the paper. According to his testimony, on the date which the note bears he went to the Brewing Company, and stated he had an opportunity to purchase a saloon in one of the outlying precincts, which had a license, for $1,000, and proposed to the Brewing Company to put up money to purchase the saloon, and to take therefor the promissory note of the prospective purchaser, secured by a chattel mortgage on his ice box, bar fixtures, and general equipment. To this proposition the Brewing Company acceded. Thereupon he asked the Brewing Company to give him the $1,000 to make the purchase with, and they gave him a check for it. After its delivery the representative of the Brewing Company asked him to give a memorandum showing his receipt of the money. Thereupon the note was drawn up and signed by Barets, and left with the Brewing Company, which agreed to return this note on receipt of the note and chattel mortgage of the purchaser of the property. Barets seemed to have acted in good faith, bought the saloon according to the arrangement, paid the $1,000 therefor, and on the 19th or 20th of the month sold it to one Rinderman, who completed, the arrangement by giving his own note, due two years after its date, to the order of The Denver Brewing Company, with interest at 10 per cent per annum until paid, payable quarterly, for value received. Concurrently with the execution and delivery of this note, Rinderman executed a mortgage on the property in the saloon, under the arrangement which had been made with Barets, and delivered it to the Brewing Companjn The Brewing Company took Rinderman’s note and mortgage, and proceeded to do business with him, selling him beer at *343 a price in advance of the price charged to cash customers. The business was carried on in this way for some time, until Einderman either abandoned it or made a failure of it, and there were sundry and divers other transfers made to different parties. Ultimately the enterprise proved a failure, and the Brewing Company foreclosed the mortgage, sold the stock, and proceeded to appty the proceeds, fro tanto, to the payment of the Barets note. The Rinderman note and chattel mortgage were entered on the books of the Brewing Company, and from the time of their execution were treated as its property. During the progress of the trial the plaintiff objected to the introduction of most of the testimony which tended to elicit the details of the transaction, on the general theory that it was testimony tending to vary a written agreement.
There can be no doubt of the general rule that written contracts can neither be contradicted, varied, nor altered by proof of an oral contemporaneous agreement; nor can it usuaJQy be shown that the agreement is to be liquidated or paid, except in accordance with the terms of the writing. It is well recognized that there is a very decided difference between cases where actions are brought by bona fide transferees of commercial paper before maturity, and those which run between the original parties to the transaction. Probably this difference need hardly be adverted to. The general rule is not regarded as at all infringed by proof of a contemporaneous parol agreement, providing this proof be accompanied by satisfactory evidence that the written instrument was either never delivered, or delivered on a condition which had not been performed, or delivered under circumstances which show that the paper, if it be of a commercial character, was never intended to be the promissory note of the party who executed it. The distinction has been thoroughly recognized, and may be regarded as well established in this country.
■ The present case is sought to be brought within the general doctrine first announced, on the theory that since the writing, *344 on the face, purported to be the promissory note of the defendant Barets, it is conclusive on this question, and he should not have been permitted to show the conditions under which he gave it, even though they tended to prove it was never delivered as a promissory note, but simply as evidence of the Brewing Company’s interest, and for its protection, and as a guaranty that Barets would carry out the arrangement.
Possession of a promissory note is undoubtedly strong frima facie evidence that the instrument came into the hands of the holder as the promissory note of the maker, and where the testimony is equally balanced, and the matter is left at all in doubt, the instrument and its possession will be regarded by the court or jury as a controlling circumstance. It, however, has not been regarded as conclusive, and the maker has been permitted to show that it was never intended it should be his note. Barets might therefore prove it was not his note, and that the agreement was not to return the $1,000 according to the terms of the promise, but it was to stand simply as a memorandum which would protect the Brewing Company, and insure the performance of the contract. Wherever an agreement is conditionally delivered, the promise does not become an unconditional promise of the maker, nor a binding obligation, except upon the failure of the condition, or a failure of performance on the part of one or the other parties to the contract, whereupon, of course, it would become a valid and binding obligation. Parol evidence of this description does not vary or contradict the terms of the agreement. It merely goes to the proposition that the note was never executed or delivered as a promise to pay money, but was delivered as a memorandum of the engagement of the parties, to become effectual only on the contingency which may or may not have happened, according to the proof.
There are many cases wherein this exception to the general rule has been exemplified under varying conditions, and it is very ably and lucidly stated in an opinion of the supreme court of the United States. Burke v. Dulaney, 153 *345 U. S. 228. Many others might be cited, but this is ample to support the conclusion at which we have arrived.
According to the defendant’s testimony,—and there was nothing to contradict it,—the note was delivered as a memorandum of the agreement of the parties, to be surrendered on the carrying out of the contract. This was the purchase of the saloon by Barets; its sale to a prospective purchaser, who should execute his note, secured by a chattel mortgage for the money which was put into the enterprise by the Brewing Company. Barets seems to have carried out this contract strictly according to his undertaking. The saloon was purchased. It was sold. The purchaser gave his note to the Brewing Company, and executed a chattel mortgage to secure it. The Brewing Company took the note and chat.tel mortgage of the purchaser, entered it on their books, and subsequently, on the failure of the maker to pay, proceeded to foreclose it and apply the money to the liquidation of the account. The Brewing Company undoubtedly undertook to indorse the money as a credit on the Barets paper, and, when the enterprise proved unsuccessful, sought to hold him for the difference between what was received by the sale and the amount of the original advance.
If the rule of law which they invoke to sustain this proceeding was applicable, there would be no escape from the result. According to our opinion, the evidence brings the case entirely within .the principle of the Dulaney decision. The result seems to work out exact equity between the parties and we cannot disturb the judgment.
The appellant also urges as error the refusal of the court to permit him to put an inquiry to the manager of the Brewing Company, whether the Rinderman note was accepted in payment of the Barets paper. The antecedent discussion makes this an immaterial error. The defendant undoubtedly pleaded payment, but there was no evidence to show payment at all, unless this conclusion should be drawn from the acceptance by the Brewing Company of the Rinderman note. It is well settled in this state that the acceptance of a note *346 of a third person, although for an antecedent debt, raises no presumption that it is accepted in payment. First Nat. Bank v. Newton, 10 Colo. 161; Zook v. Odle, 3 Colo. App. 87. The defendant did not undertake to sustain his plea by other testimony, and the case wholly turns on the first proposition. This is decisive of the case, and, being resolved in the appellee’s favor, renders the affirmance of the judgment inevitable.

Affirmed,.